**E. Leon COOPER, M. D., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 81–0628–A.**

United States District Court, E. D. Virginia, Alexandria Division.

March 12, 1982.

Geoffrey J. Vitt, Alexandria, Va., for plaintiff.

George P. Williams, Asst. U. S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM

RICHARD L. WILLIAMS, District Judge.

Plaintiff, Dr. E. Leon Cooper, has filed suit seeking a refund in the amount of $5,334.00 paid towards the satisfaction of $147,268.33 Section 6672, Internal Revenue Code, penalty assessed against him. The United States has counterclaimed for the balance of the assessment plus interest.

Jurisdiction over plaintiff's claim against the United States is present under 28 U.S.C. § 1346(a)(1). Jurisdiction over the counterclaim of the United States against plaintiff is present under 28 U.S.C. § 1340 and 1345, and 26 U.S.C. § 7402(a).

## I. FACTUAL BACKGROUND

A Section 6672[1] penalty was assessed against plaintiff in the amount of $147,-768.33 on December 25, 1978, for willful failure to pay over the employment taxes of the National Medical Association Foundation, Inc. ("Foundation") for the last quarter of 1973 and the first and second quarters of 1974. The National Medical Association ("NMA"), a national association of black physicians, formed the Foundation in 1967 to improve the quality of medical care to low income residents of the inner city; promote, institute and carry on programs to provide comprehensive health care and residential accommodations for the inhabitants of the core cities of metropolitan areas and other medically deprived areas in the United States; promote facilities for physicians' practice; and enhance the image of the

---

1. Section 6672 of the Internal Revenue Code reads as follows:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

physician and demonstrate his concern for the health of the poor.

The Foundation was incorporated in the State of Delaware as a not-for-profit corporation. It received an exemption from federal income taxes under Section 501(c)(3) of the Internal Revenue Code of 1954. Consequently, the Foundation did not have to pay federal income taxes on income it might earn.[2]

■ The Foundation filed quarterly tax returns (Forms 941) for all quarters of 1970, 1971, 1972, 1973 and 1974.[3] It paid its employees their salaries but failed to pay over the withheld income and social security taxes to the government. The government credited those employees with payment of their income and social security taxes even though the Foundation failed to remit those amounts.[4] The employees' portion of the withheld income and social security taxes not paid over to the government by the Foundation was $41,701.63 for the last quarter of 1973; $69,573.88 for the first quarter of 1974; and, $36,492.82 for the second quarter of 1974.

Plaintiff was executive director of the Foundation in February of 1973 through August of 1974. He signed the Foundation's quarterly tax returns for the last quarter of 1973 and the first quarter of 1974. As executive director plaintiff had the authority to enter contracts and execute and deliver instruments in the name of and on behalf of the Foundation. He also was empowered to establish, administer and terminate specific programs on behalf of the Foundation and was authorized to perform all acts necessary for the proper administration and maintenance of such programs. He entered into and executed contracts on behalf of the Foundation and the Plan. He also was responsible for the hiring and firing of Foundation employees.

For the period in question any two of the following individuals had authority to co-sign checks on the Foundation's checking account No. 1–08060470 maintained at the Rigg's National Bank: E. Leon Cooper, James N. Snipe, and James T. Bray. Also, for the period in question any two of the following individuals had authority to co-sign checks on the checking account maintained at the American Security & Trust Company, No. 1–860–29–642: E. Leon Cooper, James N. Snipe, James T. Bray, and Kathleen Dolan. Aware that the tax liabilities had not been paid, Dr. Cooper co-signed checks to various creditors, including payroll, which amounted to more than enough to have paid the subject tax liabilities.

## II. LIABILITY UNDER SECTION 6672

### A. Authority to Control Payment of Corporate Funds.

■■ In order for a person to be liable under Section 6672, he must have had the authority to direct or control the payment of corporate funds for the reporting periods for which the corporation should have, but

---

**2.** In 1973, the Foundation formed the National Medical Association Foundation Plan, Inc. ("Plan"). On August 7, 1973, the Plan was incorporated in the District of Columbia for the purpose of providing comprehensive pre-paid health care for low income residents of certain areas of the District of Columbia. It was intended that the Plan would function as a health maintenance organization ("HMO"). An HMO is an organization which accepts contractual responsibility to assure the delivery of health services, including hospital care, to a voluntarily enrolled population in exchange for an advance capitation payment.

**3.** An employer must report the amount of income and social security tax withheld from his employees on Form 941 (Employer's Quarterly Tax Return). Treasury Regulations on Employment Tax (1945 Code), 26 C.F.R., Section 31.6011(a). This return must be filed quarterly and is due by the close of the month following each calendar quarter. 26 C.F.R., Section 31.-6071(a).

**4.** When an employer withholds taxes at the source but fails to pay them over to the United States, the employee must be credited with payment. *Garsky v. United States*, 600 F.2d 86, 89 (7th Cir. 1979). Unless the government has recourse for the collection of the tax from an employer or a responsible agent of an employer, the tax is lost. *Newsome v. United States*, 431 F.2d 742 (5th Cir. 1970).

did not, pay over taxes. In tax jargon, this person is termed a "responsible person."[5]

One does not have to be the sole "responsible person" in order to be held liable. The fact that others may also have qualified as responsible officers does not shield any one responsible person from liability. *Monday v. United States*, 421 F.2d 1210 (7th Cir. 1970), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); *Burack v. United States*, 461 F.2d 1282, 198 Ct.Cl. 855 (1972); *Datlof v. United States*, 252 F.Supp. 11 (E.D.Pa.1966), *aff'd.*, 370 F.2d 655 (3d Cir. 1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). One who has significant but not necessarily exclusive control over which bills should or should not be paid is a "responsible person." *Adams v. United States*, 504 F.2d 73, 75 (7th Cir. 1974); *Genins v. United States*, 489 F.2d 95, 96 (5th Cir. 1974); *Anderson v. United States*, 561 F.2d 162, 165 (8th Cir. 1977); *Dudley v. United States*, 428 F.2d 1196, 1201 (9th Cir. 1970).

Other court-developed criteria for identifying a "responsible person" are: the identity of the individual who signed the quarterly tax returns and other tax returns; the identity of the officers, directors, and principal stockholders; the identity of the individual who hired and fired employees; and the identity of the individual who was in control of the financial affairs of the corporation. *See Datlof v. United States*, 252 F.Supp. 11, 32–3 (E.D.Pa.1966), *aff'd.*, 370 F.2d 655 (3d Cir. 1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967).

Under these criteria, plaintiff as chief operating officer of the Foundation, clearly had the duty of making sure that the Foundation satisfied its tax liabilities during the period in question.

However, plaintiff maintains that he received directions at a meeting of the Foundation's board of directors on January 5, 1974, which bound his financial discretion on meeting Foundation obligations to such an extent that he cannot be considered a "responsible person" after that time. At the meeting those present discussed various ways of dealing with the financial difficulties the Foundation was experiencing at that time. Plaintiff recommended going into bankruptcy. Instead, the board directed plaintiff to make all efforts necessary to continue the Foundation's then-current operations. Although taxes were discussed, and one person present recommended immediate payment, plaintiff does not recall whether he was specifically directed not to make payment. However, he states that as a practical matter, he could not have continued operations *and* paid taxes. He asserts that the board's general directive was tantamount to an order not to pay its tax liabilities, and because it took that power away from him, he could not have been a "responsible person" under Section 6672 after January 5, 1974.

Had the board specifically directed plaintiff not to meet the Foundation's tax liabilities, this case would present a closer question. The board's general directive does not compel the conclusion that the directors commanded plaintiff to disobey the law, and there was no evidence that any other persons connected with the Foundation understood the directive this way, except for plaintiff. The plaintiff has not sustained his burden of proof that he was not a responsible person after the meeting of January 5, 1974. He had as many corporate powers after the meeting as before, and the court therefore finds that he was a responsible person under Section 6672 for the last quarter of 1973 and the first two quarters of 1974.

**B.   Willfulness.**

In order for a "responsible person" to be liable under Section 6672, his failure

---

**5.**   The plaintiff has the burden of demonstrating that he was not a responsible person. *United States v. Pomponio*, 635 F.2d 293 (4th Cir. 1980). He has both the burden of going forward and the burden of persuasion with respect to the entire assessment. *Psaty v. United States*, 442 F.2d 1154, 1159 (3d Cir. 1971); *Lesser v. United States*, 368 F.2d 306 (2d Cir. 1966); *Hornsby v. Internal Revenue Service*, 588 F.2d 952 (5th Cir. 1979); *Anderson v. United States*, 561 F.2d 162 (8th Cir. 1977).

to collect and pay over taxes must have been willful. *Monday v. United States, supra.* " 'Willfulness' has been almost universally defined as an intentional, voluntary, conscious act or omission." *Feist v. United States,* 607 F.2d 954, 961 (Ct.Cl.1979) (citations omitted). *See also Cross v. United States,* 311 F.2d 90 (4th Cir. 1962); *Burden v. United States,* 486 F.2d 302 (10th Cir. 1973); *Monday v. United States, supra.* Whenever a responsible person permits assets of the corporation to be disbursed, knowing taxes are unpaid, liability attaches. *Mazo v. United States,* 591 F.2d 1151 (5th Cir. 1979), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir. 1974); *Teel v. United States,* 529 F.2d 903, 905–6 (9th Cir. 1976); *Barnett v. United States,* 594 F.2d 219 (9th Cir. 1979).

■ Plaintiff argues that after the board meeting of January 5, 1974, plaintiff's failure to pay over the taxes due was involuntary. However, the court has found that the board did not deprive plaintiff of the power to pay over taxes at its meeting of January 5, and therefore now finds that plaintiff's failure was voluntary. He also was aware of the liabilities for the quarters in question. Therefore his failure was willful.[6]

C. The Issue of the Government's "Due Diligence."

■ Plaintiff argues that the government's failure to make a diligent effort to collect from the Foundation bars imposition of a Section 6672 penalty on plaintiff. In April of 1974, an IRS agent named Norton visited the Foundation, and stated a payment plan for the taxes due from the Foundation would be worked out. In May of 1974, Norton met the directors of the Foun-

dation on the subject of the back taxes. Both plaintiff and directors understood from Norton that a payment plan would be hammered out. At the time of these visits, the Foundation still had considerable assets, with which it might have paid off its tax liability. The agent never returned. Then, long after the agent's failure to pursue the matter, the government came after plaintiff for payment via the Section 6672 penalty.

Section 6672 does not include any requirement that the government exercise "due diligence" in its collection efforts against the employer corporation. "The personal liability created under Section 6672 is separate and distinct from that imposed upon the employer under Section 3403 of the Code. The Service need not have attempted to collect from the employer before assessing a responsible person under Section 6672." *Datlof, supra,* at 656 (citations omitted). *See also Teel, supra; Monday, supra.*

In arguing for an exception to the general rule of separate and distinct liability, plaintiff relies on *McCarty v. United States,* 437 F.2d 961, 194 Ct.Cl. 42 (1971) for his proposition that the government is "barred from invoking Section 6672 against a responsible officer when its own omission to collect the tax from the corporate employer was a supervening cause of the loss of revenue." Plaintiff's Trial Brief, p. 11. However, this is an overstatement of *McCarty*'s holding.

In *McCarty,* the Internal Revenue Service and a corporation entered into an agreement whereby the corporation would pay off the delinquent tax obligation in monthly installments. Subsequently the Navy took over the management and control of the corporation. Shortly after that, the plaintiff in *McCarty* lost whatever effective au-

---

**6.** Also, plaintiff could not have claimed that the demands of creditors, coupled with the board's general instructions, gave him "reasonable cause" or a "justifiable excuse" not to pay over taxes.

The standard of willfulness should not be construed to include lack of "reasonable cause" or "justifiable excuse." These concepts tend to evoke notions of evil motive or

bad purpose which properly play no part in the civil definition of willfulness. * * * In addition, "reasonable cause" and "justifiable excuse" invite consideration of such misleading and improper factors as the financial condition of the business or the demands of creditors. *Monday v. United States, supra,* at 1216. (Citations omitted).

thority he previously had to pay bills such as tax liabilities. The Navy, aware of the agreement between the corporation and the IRS, then caused the corporation to breach its agreement by not permitting it to make further payments on its delinquent taxes. Although the Navy informed the IRS that the IRS would receive nothing until all claims of the Navy and Air Force were satisfied, the IRS made no response and did not attempt to collect back taxes from the corporation, apparently because it deferred to the Navy's desire for contract performance and for recovery of Navy-guaranteed loans.

The facts in *McCarty* are particularly egregious: one arm of the government was responsible for the breach of an agreement with another arm of the government, and then the government decided to go after an individual who was not at all responsible for the breach of the agreement. In this case there is no evidence of any similar agreement, of any government act or commission preventing "responsible persons" in the corporation from discharging their obligation to pay over taxes, or of any government participation in the making of preferential payments to other creditors out of funds of the corporation. *Compare McCarty, supra,* with *Burack v. United States,* 461 F.2d 1282, 1293–8, 198 Ct.Cl. 855 (1972). *See also* Judge Davis' opinion in *McCarty, supra,* 973–4 (Davis, J., concurring in result) (agreement between government and corporation should not have protected responsible person from liability).

### D. Equal Protection.

■ Finally, plaintiff argues that the government's decision to collect from him when it could have collected from the Foundation violates equal protection, because similarly situated responsible persons have not been so treated. In *McCarty, supra,* the Court of Claims interpreted IR–Mem. No. 56–46 as stating a policy of IRS not to collect from responsible persons when "the taxes cannot be or could not be collected from the corporation and . . . there are no tangible assets against which distraint can be made." *Id.* at 972 (emphasis in original deleted). However, IR–Mem. No. 56–46 is no longer current,[7] and the present statement of IRS policy on the matter, Int.Rev. Manual P–5–60 (1981), declares that the Section 6672 liability "will be asserted against responsible officers and employees of the corporation *only if* such taxes *cannot* be collected from the corporation itself." (Emphasis added). Int.Rev. Manual P–5–60 does not set forth a policy of the IRS not to collect from responsible persons when the taxes *could not have been* collected from the corporation itself.[8]

Other than the policy statements mentioned above, plaintiff has adduced no evidence that the IRS has departed from administrative practice and singled plaintiff out for harsher treatment than that accorded other taxpayers. There is insufficient evidence of any violation of equal protection.

In light of the above considerations, the court finds in favor of the government on both the plaintiff's claim and the government's counterclaim. An order reflecting the conclusions of this memorandum accompanies this memorandum.

---

7. In *McCarty,* the Court of Claims considered IR·Mem. No. 56–46 as it applied to taxes due for 1952 and 1953.

8. It appears that the Court of Claims does not regard Int.Rev. Manual P–5–60 as encapsulating a policy not to collect from responsible persons when the IRS *could have collected* from the corporation. "P–5–60 . . . provides that the penalty may be collected from the officer only if the tax *cannot* be collected from the corporation itself." *Bolding v. United States,* 565 F.2d 663, 669 n.3 (Ct.Cl.1977) (emphasis added). Also, it is not clear to this court that IR–Mem. No. 56–46, which of course is no longer current, enunciated such a policy in the first place.